## APPEAL OF ESTHER FIRESTONE.

Docket No. 740.   Submitted April 27, 1925.   Decided July 11, 1925.

1. Gain derived from the sale of real estate in the year 1920 *held* to be the difference between the net selling price and, in this appeal, the March 1, 1913, value determined from facts concerning sale transactions of other properties and expert opinion evidence.

2. In arriving at the amount of gain derived from the sale of property, including buildings, in 1920, consideration must be given to the reasonable depreciation sustained by such buildings from March 1, 1913, whether claimed as a deduction in prior income-tax returns or not.

*L. E. Rusch, Esq.*, for the taxpayer.
*Arthur H. Fast, Esq.*, for the Commissioner.

### Before JAMES, SMITH, and TRUSSELL.

This is an appeal from a proposed deficiency in income tax for the year 1920 in the amount of $1,913.34, and the only issue presented for our consideration is the amount, if any, of gain derived from the sale of real estate acquired prior to 1913.

#### FINDINGS OF FACT.

The taxpayer, Esther Firestone, was a resident of McKeesport, Pa. In 1908 she acquired from her husband for a nominal consideration a lot in the City of McKeesport, upon which there were situated store buildings and a residence. The lot in question was in a block or square bordered on the north by Fourth Avenue, on the east by Locust Street, on the south by Jerome Street, and on the west by Tube Works Alley. In this block, or square, there were eleven separate tracts or parcels of land held by eleven owners. The taxpayer's tract was $34\frac{1}{10}$ feet wide by 150 feet deep. During the year

1920 she sold this property, with all the buildings and improvements thereon, to the National Tube Co. for a net consideration of $24,923.44.

In 1915 another owner, having a tract 34 feet wide by 75 feet deep, fronting on Jerome Street, sold his property for $3,000. Still another owner, having a tract 16 feet wide and 150 feet deep, fronting on both Fourth Avenue and Jerome Street, sold the property in the year 1917 for the sum of $4,000.

One expert witness testified that in his judgment the taxpayer's land had a value on March 1, 1913, of $550 per front foot and that the buildings then had a value of $2,500. Another expert witness testified that in his judgment the taxpayer's land had on March 1, 1913, a value of $450 per front foot and that the buildings then had a value of $4,500.

The Commissioner, acting upon information alleged to have been furnished by a revenue agent, found the March 1, 1913, value of the taxpayer's property to be $13,866.67. The Commissioner, in arriving at his computation of gain, deducted from the value an amount computed as depreciation upon the taxpayer's buildings from March 1, 1913, to January 1, 1920, in the amount of $1,068, and found the gain derived from the sale to be $12,124.77.

The March 1, 1913, value of the taxpayer's property here under consideration is land, $450 per front foot, equal to $15,606; buildings, $4,500; total, $20,106.

### DECISION.

The amount of the deficiency in tax should be recomputed in accordance with the following opinion. Final determination will be settled either by consent or on 15 days' notice, pursuant to Rule 50.

### OPINION.

TRUSSELL: The decision of this appeal involves a determination of the March 1, 1913, value of the taxpayer's property, consisting of a tract of real estate and buildings thereon acquired by the taxpayer in the year 1908 and sold in the year 1920. It appears from the petition that the Commissioner, in computing his alleged deficiency, based his findings upon a report of an examining revenue agent who seems to have inquired into the valuation of the taxpayer's property for the purpose of local taxation for the year 1913, and to have assumed that such valuation represented 75 per cent of the true value of the property at that time.

The testimony furnished at the hearing consisted of depositions of two experienced real estate owners and dealers in the City of Mc-Keesport, both of whom were acquainted with the taxpayer's prop-

erty as well as property in that city for many years. Each of these witnesses was examined at length by counsel representing the taxpayer and also by counsel representing the Commissioner, who questioned the witnesses in regard to the history and the uses of the taxpayer's property and other properties in the immediate neighborhood.

The facts concerning the sales of the other properties set forth in the findings of fact were testified to by these witnesses, and much other testimony in reference to other transactions was given, but the two transactions above referred to were the only ones which appeared to have been made with relation to that of the taxpayer. The testimony of each of the witnesses also shows that property in the neighborhood had gradually increased in value over a period of many years prior to 1914; that at or about 1914, due to the conditions produced by foreign wars as well as local conditions, properties in this neighborhood began to decline in value; and that sales in 1915 and 1917 could not be taken to be fairly representative of values in 1913. Attention was also directed to the fact that the taxpayer's property is a tract $34\frac{1}{16}$ feet wide by 150 feet deep, while one of the properties, the sale of which in 1915 is shown in the evidence, was 34 feet wide but only 75 feet deep; the other property sold in 1917, although 150 feet deep, was only 16 feet wide. The sale prices of such properties were not a fair guide to the value of property 34 feet wide and 150 feet deep.

The witness, Gilbert F. Myer, after qualifying as an experienced real estate dealer, gave as his opinion that the taxpayer's land had a value on March 1, 1913, of $550 per front foot, and that the buildings on the land had a then value of $2,500, making a total value for land and buildings of $21,244. The witness, Harry T. Watson, after qualifying as an expert in real estate values, gave as his opinion that the fair value of the taxpayer's property on March 1, 1913, was $450 per front foot for the land and $4,500 for the buildings, producing a total value of $20,106.

Assuming, for the purpose of this appeal, that the figures reported by the revenue agent are based upon records found by him although not supported by any evidence in the record, we are thus faced with three different and varying valuations of the taxpayer's property, ranging from an assessed valuation of $13,866.67 to the highest figure given by the witnesses of $21,244, and we must find from the data herein recited the fair market value of the taxpayer's property as of March 1, 1913. The unsupported report of the revenue agent as to local assessment value, in the absence of any knowledge as to the methods of making such local assessments, is far from convincing.

In view of the record in this appeal and the conflict of evidence respecting property values, we are led to the adoption of the smaller figures given by the above opinion testimony, and we are, therefore, of the opinion that the March 1, 1913, value of the taxpayer's property must be computed upon the basis of $450 per front foot for the land and $4,500 for the buildings thereon, and that, in computing the gain derived from the sale of such property in the year 1920, depreciation upon the building value of $4,500 should be taken at the rate heretofore allowed by the Commissioner for the period from March 1, 1913, to January 1, 1920, in accordance with *Appeal of Even Realty Co.*, 1 B. T. A. 355.