## APPEAL OF L. A. THOMPSON PACIFIC COAST CO.

Docket No. 1869.   Submitted May 4, 1925.   Decided September 28, 1925.

The March 1, 1913, value of land involved in this appeal, determined upon the basis of evidence of selling transactions of comparable properties and expert opinion testimony.   Following *Appeals of American Express Co.*, 2 B. T. A. 498, and *Esther Firestone*, 2 B. T. A. 309.

The March 1, 1913, value of land being in excess of cost, the taxable gain derived from a sale in 1920 is the difference between that value and the net amount received from the sale.

*Victor C. Cormier, Esq.*, for the taxpayer.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, and TRUSSELL.

This appeal is from the determination of a deficiency in income and profits tax for the calendar year 1920 in the sum of $18,794.99. The deficiency arose from the refusal of the Commissioner to accept the March 1, 1913, value placed upon certain real estate by the taxpayer for the purpose of computing the gain resulting from a sale in 1920.

### FINDINGS OF FACT.

1. The taxpayer, a California corporation (now dissolved), was at the times herein mentioned the owner of certain real estate situated in Santa Monica, Calif., which property was acquired prior to March 1, 1913. The land is located in what is known as " Ocean Park," a recreation center. The tract is approximately 200 by 400 feet with 400 feet fronting on the Pacific Ocean. It is bounded on the east by a public thoroughfare, " Ocean Front Promenade;" on the north by Raymond Street; on the south by Kinney Street; and on the west by the Pacific Ocean, including " pier rights." This property was originally purchased for recreation and amusement purposes. Upon it was constructed a large scenic railway known as the " Dragon Gorge Scenic Railway." Upon the east side facing the " Promenade " were business houses and shops. The entire district was a rapidly growing recreation center a short distance from Los Angeles, and all the property near the ocean commanded high prices. In September, 1912, a fire destroyed a large portion of this recreation center, including the buildings on taxpayer's land, but the district immediately began to rebuild on a scale larger and better than before. The taxpayer's property, on account of its location, was suitable for business purposes, pier hotels, apartment houses, general concessions, and bathhouses.

In September, 1920, the taxpayer sold this property for $240,000, and in its income-tax return claimed a March 1, 1913, fair market value of $182,188.94. After deducting commissions and necessary selling expenses the taxpayer returned a net gain of $38,208.56 resulting from this sale. The value of this property as carried on the books of the taxpayer was $160,000. At the hearing the taxpayer was permitted to amend its petition so as to allege the fair market value of the property in question on March 1, 1913, to be $240,000, instead of $182,188.94, as originally alleged.

2. The sale price of property similarly situated as was the property of the taxpayer on or about March 1, 1913, was as follows:

The "Emma Summers" property, 105 feet, sold for $55,000, $525 per front foot. This property was on the east side of the Ocean Front Promenade directly across the street from the north end of the taxpayer's property. It had no "pier rights".

The "Adolphus Busch" property sold for $1,000 per front foot—situated two blocks south of the taxpayer's property and fronting the Ocean.

In July, 1913, the City of Santa Monica started condemnation proceedings to widen the Ocean Front Promenade which was the eastern boundary of the property in question. The taxpayer was a party to these proceedings, as they included a strip 400 feet long and 22½ feet wide on the east side of its property. The taxpayer was awarded $31,500 for this strip. For the purpose of the condemnation proceedings, the taxpayer's land was valued at $600 per front foot. At that time the taxpayer's property comprised 500 front feet and the entire tract was valued in those proceedings at $300,000. Only the southerly 400 feet of this tract is now in question.

In the year 1913 the property was listed for sale with Carl F. Schader, a real estate dealer, at $600 per front foot, but there were no buyers at this price. The taxpayer, however, in 1913, refused an offer of $500 per front foot for the entire tract.

3. A summary of the various values placed on the property in question as of March 1, 1913, is as follows:

| | |
|---|---|
| Book value as carried by the taxpayer | $160,000.00 |
| Value originally returned by taxpayer | 182,188.94 |
| Value alleged in amended petition | 240,000.00 |
| Value placed by witness, Wm. Aikins | 240,000.00 |
| Value placed by witness, Carl F. Schader | 220,000.00 |
| Value placed by City of Santa Monica (condemnation proceedings) | 240,000.00 |

The Board finds that the fair market value of the land here in question on March 1, 1913, was $525 per front foot, or $210,000.

### DECISION.

The deficiency, if any, should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, pursuant to Rule 50.

## OPINION.

TRUSSELL: The property is situated in Santa Monica, Calif., near Los Angeles, and has a frontage of 400 feet on the ocean with "pier rights." The values are computed on the front-foot basis. It is undisputed that the property was sold in September, 1920, for $240,-000 and that it was acquired in the year 1911 and entered on taxpayer's books at $160,000. The witnesses for the taxpayer were William Aikins and Carl F. Schader. Aikins had been engaged in the real estate business in Santa Monica for 14 years and had been a member of the local State and national insurance and real estate associations. He was familiar with the value of real estate in this district and knew the particulars of two large sales of real estate close to taxpayer's property on or about March 1, 1913. Aikins was also a witness in the condemnation proceedings referred to in the findings of fact, in which a portion of the taxpayer's land was included. He had been also an expert witness on land values in other financial proceedings in that city. Aikins testified that the fair market value of this land on March 1, 1913, was $600 per front foot, or $240,000.

Schader also was an experienced real estate dealer, doing business in this district during the year 1913. He had lived in Santa Monica and Los Angeles since 1888. He personally had disposed of approximately $1,000,000 worth of real estate facing the ocean front near the property in question. He was also familiar with the sales referred to in Aikins' testimony, and had testified as an expert in various condemnation proceedings in Santa Monica. Furthermore, he had the property in question listed at $600 per foot in 1913 and 1914, but no sale resulted. He, personally, in 1913, offered $500 per front foot, which offer was refused. He placed a fair market value as of March 1, 1913, on the property in question of $550 per front foot.

From the evidence adduced, the property was evidently worth over $500 per front foot, or $200,000, as an offer of $500 was refused by the taxpayer in 1913. On the other hand, the value must have been less than $600 per front foot, as this property seems to have been listed for sale at that price in 1913 and 1914 and there were no buyers.

The actual cost of the property here in question was not proven by evidence produced at the hearing, but, in view of the fact that the taxpayer carried this property upon its books at a value of $160,000, it is taken for granted that its actual cost was not in excess of that amount.

The record of this appeal places before us varying values of properties situated near to the land here in question which have been the

subject of sales made in the year 1913, the valuations of two capable experts who are not in agreement, and also a valuation of the land in question determined in the course of an exercise of eminent domain for street-widening purposes.

The Board is thus placed in the position of having to weigh the conflicting evidence and to arrive at its own determination of value. The situation here is not unlike the one presented in the *Appeal of Esther Firestone*, 2 B. T. A. 309, and differs only in degree from the situation presented in the *Appeal of American Express Co.*, 2 B. T. A. 498. In view of all the facts contained in the record and the opinion testimony, we have arrived at the conclusion that the fair market value of the land here in question, on March 1, 1913, was $525 per front foot, or $210,000, and that the taxable gain with which this taxpayer must be charged in the year 1920 is the difference betweeen the last-named figure and the net amount realized from the sale.

ARUNDELL not participating.