W. F. WYATT v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 18 October, 1911.)

1. Pleadings—Interpretation—Substantial Justice.

The allegations of a pleading shall be liberally construed with a view to substantial justice between the parties, and every reasonable intendment is made in favor of the pleader.

2. Same—Railroads—Fire Damage—Defective Locomotive—Sparks.

In an action against a railroad company for damages caused by fire from the defendant's locomotive, it was alleged that the defendant negligently and carelessly permitted said engine to emit sparks and coals of fire, which fell upon plaintiff's property, etc.: *Held,* the preceding allegation in the same paragraph, "in operating and running an engine," merely indicated where the engine was at the time, and what was being done with it, and the pleading was sufficient for the introduction of the plaintiff's evidence tending to show, as the cause of his damage, that the locomotive was defective.

3. Same—Off Right of Way—Contributory Negligence—Buildings—Inflammable Conditions.

In an action for damages against a railroad company for the negligence of the defendant in setting fire to plaintiff's buildings, adjoining but not on the right of way, by sparks emitted from a passing locomotive, there being no evidence that the fire was communicated from combustible matter on the right of way, the right of plaintiff's recovery depends upon whether he could show that the fire was caused by a defective engine, or that it was negligently operated, and evidence sought to establish his contributory negligence is incompetent which tends to show that the buildings destroyed were old, neglected, and inflammable, for the plaintiff would have the right to assume that the defendant would not run an engine so defective or in such a negligent manner as to cause the fire.

4. Witnesses—Opinion Evidence—Nonexperts—Experience.

Opinions of witnesses as to the value of lands, houses, etc., when relating to the measure of damages caused thereto in an action concerning them, are competent when the witnesses, by experience and information, are qualified to speak.

5. Evidence—Railroads—Negligent Burning—Time of Injury—Other Times.

While in estimating the value of lands and houses on the issue of damages the jury is restricted to the time of the injury, testimony as to the value at other times is competent when it bears on the value at that time.

6. Railroads—Fire Damage—Measure of Damages—Evidence—Tax Deeds.

Tax deeds are incompetent evidence of value of plaintiff's lands and buildings, in his action to recover damages to his buildings and lands caused by defendant's negligence, or to show a reduction in the damages from the amount that plaintiff's evidence tended to establish.

APPEAL from *Whedbee, J.,* at April Term, 1911, of WAKE.

This action is to recover damages for the negligent destruction of property of the plaintiff by fire. The allegation of negligence is as follows:

"That on 11 April, 1910, the employees and agents of the defendant, in operating and running an engine over said railway near the premises of the plaintiff above described, negligently and carelessly permitted said engine to emit sparks and

coals of fire therefrom, which fell on plaintiff's property above described and set fire thereto and burned up and destroyed the same, to his damage in the sum of $5,000, as he is informed and believes."

The defendant denies negligence, and for a further defense alleges:

"That if the plaintiff's property was destroyed by fire, as alleged in the complaint, which the defendant denies, plaintiff by his own negligence contributed to bring about such injury, in that he permitted his property to become and remain in an inflammable state and in a negligent condition, and failed to provide a watchman therefor, and his contributory negligence is set up by the defendant in bar of plaintiff's right to recover in this action."

The defendant does not contend that there is no evidence that the defendant set out the fire which burned the property of the plaintiff, but insists that the complaint alleges negligence in the operation of the train, and that this allegation is not supported by evidence of a defective spark arrester.

This contention is presented by two prayers for instruction, which were refused:

"There is no evidence of negligence in the operation of this engine by the employees of the defendant, and you will answer the second issue 'No.' "

"In order to answer the second issue 'Yes,' you must find that the defendant's employees negligently operated the engine on the train which set out the fire, if you find that it was set out by an engine."

His Honor instructed the jury to answer the issue of contributory negligence "No," and defendant excepted.

The evidence in support of the plea of contributory negligence is as follows:

Plaintiff testified that he placed one of his buildings as near the railroad line as he could get it; that he had no tenant for the tannery or bark sheds.

J. H. Harrison, witness for the plaintiff, said the roof of the bark house where fire started was rotten and very dry, and that

he might have described it as burning like powder; that the tannery property was a loafing place for hoboes, and there was one who cooked in the building one or two nights. The buildings were in a dilapidated condition.

For the defendant, A. L. Pritchett testified that the grade is north at the point of the fire. From the outside, buildings were ragged looking, especially the roof. Conditions around the buildings grassy and trashy looking.

J. H. Edgerton said the buildings were in a very dilapidated condition; the shingles were turned up and mossy; grass and weeds around the building.

Charles Creighton testified that the buildings were in a very bad state; they were all decayed and rotten; roof all rotten; doors off, windows off, and in every way in bad state. The property did not appear to ever be looked after, and it was in bad fix. Weeds as high as a man's head were in the yard around the buildings. It was a regular "hold-out for hoboes."

W. T. Smith said the property was in pretty bad shape, mostly rotted down, the roof especially, and the shingles were curled up, and there was moss on the shingles. Sides of building were torn off, the floors up, windows out, the plastering knocked off in the cottage, and part of the flooring torn up.

T. B. Moseley testified that the buildings were dilapidated and run down for want of repairs; they seemed neglected; grown up in weeds; "the condition of an old settlement that has been abandoned."

J. J. Haywood testified that the property was in bad shape; it was all gone down and dilapidated; no windows at all; doors all down and some panels knocked out. The building nearest the railroad was pretty near down; the weatherboarding and roof were rotten; it was used by gamblers, white and colored, and disreputable women; the grounds around the buildings were grown up in dry weeds and grass. The buildings had been used by tramps, and it could be seen that they had built fires in the buildings.

Plaintiff asked the witness J. H. Harrison: "What, in your opinion, was the value of the property that was burned, in the

condition the property was in at the time of the fire?" The witness answered, "Not less than $4,000, if it was mine." The defendant objected to the question and answer.

John Briggs, who qualified as an expert, testified as follows:

Q. Taking the buildings as you saw them, what would you say they were worth? A. I base my calculation on them as of the last time I saw them, and I figured on the sizes from what I was told. I have no personal recollection of the sizes of the buildings or of the size of the part I put up.

Q. Can you give an opinion satisfactory to yourself as to their value? A. I think so.

Q. Assuming that the jury should find from the evidence that the two tan-bark houses were 25 x 100 feet and 30 x 80 feet, respectively, and taking into consideration your own personal knowledge of the construction of the two houses, what were they worth on the day of the fire? A. One tan-bark house 25 x 100 feet I value at $1,000; one tan-bark house 30 x 80 feet, with 30-foot basement, I value at $1,320. The three-story tannery, 25 x 50 feet, I value at $1,500; the three-room cottage I value at $650, making a total of $4,470. (That part of the answer as to the three-story tannery and cottage was excluded.)

Q. Assuming that the jury should find from the evidence that the tannery was 25 x 50 and three stories high, from your own knowledge of the condition of it the last time you saw it, can you form an opinion satisfactory to yourself as to the value of the tannery? A. Yes.

Q. What would you say the tannery was worth? A. $1,500. The defendant excepted to the admission of this evidence.

The defendant introduced M. R. Haynes, a tax lister of Wake County, and proposed to prove by him that after the fire the plaintiff, through his agent, asked for a reduction in the valuation of his property, and the amount of the reduction asked for.

The witness testified that he did not know what reduction was asked for; that he only knew how much was made. He was then asked what reduction was made.

This evidence was excluded, and the defendant excepted.

The defendant also offered in evidence the abstracts before and after the fire, to show the difference in valuation. This evidence was excluded, and the defendant excepted.

The jury returned the following verdict:

1. Was plaintiff's property damaged by fire set out by defendant's engine? Answer: Yes.

2. If so, was the fire set out by sparks negligently emitted by the defendant's engine? Answer: Yes.

3. Did the plaintiff by his own negligence contribute to the cause of said fire? Answer: No.

4. What damage has plaintiff suffered by reason of said fire? Answer: $2,500.

There was a judgment in favor of the plaintiff, and the defendant appealed.

*Aycock & Winston and D. L. Ward for plaintiff.*
*Murray Allen for defendant.*

ALLEN, J., after stating the case: The uniform rule, prevailing under our present system, is that the allegations of a pleading shall be liberally construed with a view to substantial justice between the parties, and that every reasonable intendment is made in favor of the pleader. *Brewer v. Wynne,* 154 N. C., 472.

The just application of this rule tends to the trial of cases upon their merits, and we would not be justified in relaxing it in a case like this, where there has been a trial before a jury, and both parties have had full opportunity to present their evidence.

It would require a very strict construction of the allegations of the complaint to give it the meaning contended for by the defendant, to wit, that it only alleges negligence in the operation of the train.

If we give to the pleading every "reasonable intendment in favor of the pleader," and "construe it liberally," as our authorities require, the negligent act alleged in the third paragraph of the complaint is that the defendant "negligently and

carelessly permitted said engine to emit sparks and coals of fire therefrom, which fell on plaintiff's property, etc."; and the preceding language, "in operating and running an engine," merely indicates where the engine was, and what was being done with it, at the time of the negligent act.

If so, it was competent for the jury to consider evidence of defects in the engine under the allegations of the complaint.

The defendant's counsel presented his contention as to the contributory negligence of the plaintiff with much force and ability and cited authority from eminent courts in support of his position.

We do not, however, agree with him that the weight of authority sustains his view, and we think his Honor held correctly that there was no evidence to sustain the plea.

The buildings, which were destroyed by fire, were on the land of the plaintiff, adjoining the right of way of the defendant, and the negligence alleged is that the plaintiff failed to repair them, and had permitted the roofs, where the fire began, to become rotten and highly inflammable.

The buildings had been erected about eighteen years, and there is no evidence they were ever ignited prior to the time they were destroyed.

As the buildings were not on the right of way, and there is no evidence that fire caught in combustible matter on the right of way and was communicated to them, the plaintiff could not recover unless he succeeded in proving that the engine of the defendant was defective or that it was negligently operated. *Williams v. R. R.,* 140 N. C., 624.

If so, to hold that a failure to repair is contributory negligence would require the plaintiff to foresee the negligence of the defendant and to provide against it.

We think the contrary is the rule, and that the plaintiff had the right to assume that the defendant would perform its duty, and that it would not operate an engine negligently or one that was defective.

"The general rule is that every person has the right to presume that every other person will perform his duty and obey

the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty to such other person. Hence failure to anticipate defendant's negligence does not amount to contributory negligence, even though he places his property in an exposed or hazardous position." Cyc., vol. 29, p. 516.

"Since a person is not required to anticipate the negligence of another, he will not be guilty of contributory negligence because the injury results in part from the defective condition of the property, or because its condition is such as to render the danger greater." *Ib.,* 526.

Again it is said in Cyc., vol. 30, p. 1343: "As a general rule, an owner of land has a right to use it in the ordinary and usual way and is not bound to remove dry grass, weeds, leaves, or other combustible material from his land adjoining a railroad right of way, in anticipation of probable negligence on the part of the railroad company, and a failure to perform such acts will not make him guilty of contributory negligence so as to preclude a recovery for damages caused by a fire originating through the railroad company negligence."

The following authorities, among many others, sustain the text: *Salmon v. R. R.,* 38 N. J. L., 12; *R. R. v. Ins. Co.,* 82 Miss., 779; *Hendrick v. Towle,* 60 Mich., 371; *Walker v. R. R.,* 76 Kan., 34; *R. R. v. L. Co.,* 125 Ala., 261; *Matthews v. R. R.,* 121 Mo., 334; *R. R. v. Short,* 110 Tenn., 718; *Kalbfleisch v. R. R.,* 102 N. Y., 521; *R. R. v. Burger,* 124 Ind., 278; *R. R. v. Schultz,* 93 Pa. St., 345; *R. R. v. Jones,* 86 Ind., 500; *R. R. v. Medley,* 75 Va., 506; *Coswell v. R. R.,* 42 Wis., 199; *Snyder v. R. R.,* 11 W. Va., 28.

We quote from only two of them.

In the case from Pennsylvania, the Court says: "Again, complaint is made that the court refused to instruct the jury that if either Schultz or the owner of the strip lying between his land and the railroad allowed the accumulation of dry leaves, brushwood, and other rubbish on his property, which would be readily fired by sparks ordinarily issuing from a prop-

erly equipped locomotive, that might be regarded as contributory negligence. This was certainly an extraordinary proposition: first, because the learned judge throughout the trial held that if the defendant's locomotive was properly equipped with spark-arresting appliances, the plaintiff could not recover, whether he had been careful or negligent; second, because it is an attempt to impose upon property owners along the line of a railroad duties unknown and unnecessary before the building of the road; and, third, if this proposition means anything, it means that upon such property owners devolves the duty of guarding against the negligence of railroad companies and their servants; but this is simply absurd."

And in the Michigan case: "The obligation of care to prevent the fire from the defendant's engine burning the plaintiff's mill rested upon the defendant, and the fact that old, combustible matter accumulated about the mill and in near proximity to the railroad cannot be urged as contributory negligence on the part of the plaintiff. He had a right to use the offal of his mill to fill up the waste and low places with, just as he was accustomed to do before the railroad was built. He was not obliged to guard his premises to relieve the defendant from liability for his negligent acts."

The same principle has been recognized in *Phillips v. R. R.,* 138 N. C., 19: "The owner of premises is not bound to anticipate negligence of a railroad and, by way of prevention, make provision against communication of fire."

Opinions of witnesses as to value of land, houses, etc., have been very generally received when the witnesses, by experience and information, are qualified to speak, and we think there was no error in their admission in this case. 1 Wig. Ev., secs. 714-720; *Whitfield v. Lumber Co.,* 152 N. C., 214.

It is true that in estimating value as an element of damage, the jury is restricted to the time of the injury, as his Honor held, but a witness may speak of value at other times as bearing on the value when the injury occurred.

The evidence as to reduction in the valuation of the property for taxation after the fire was properly excluded. *Ridley v. R. R.,* 124 N. C., 37; *R. R. v. Land Co.,* 137 N. C., 330.

It was the act of the officers of the law, which the plaintiff could not control, and the tax lister testified that he had no recollection of the amount of the reduction asked for by the plaintiff or his agent.

We have examined with care the entire record, and find No error.