The plaintiff alleged: "That on the morning of 1 October, 1926, about 3 o'clock a.m., the plaintiff was driving his Dodge sedan from Charlotte to Salisbury on said public highway at a moderate rate of speed; that the night was dark and cloudy and a misting rain was falling; that the plaintiff was not familiar with the locality in which he was and did not know that said railroad track crossed the highway at that point; that at said time the defendant . . . negligently stopped and permitted to remain across the highway and upon the track of defendant a long freight train, which at said time was stationary, and which completely blocked the highway; that the defendant negligently failed to give any sign whatsoever of the presence of said freight train across the highway by means of lights or any other signal or device; . . . that the plaintiff could not, in the use of ordinary care, discover the presence of said train until he was too close to the same to avoid a collision, and in attempting to do so, his car was turned to the side of the road where it was completely turned over and utterly demolished."
The defendant entered a general denial to the allegations of negligence contained in the complaint and pleaded contributory negligence of the plaintiff as the proximate cause of his injury and as a bar to *Page 212 
recovery, alleging in substance that the plaintiff failed to stop, look or listen, and in disregard of the "N.C. law stop sign," drove ahead without sufficient headlight, failing to keep the proper lookout and at too great a speed.
Issues of negligence, contributory negligence and damages were submitted to the jury, and the jury by its verdict found that the defendant was guilty of negligence and that plaintiff was not guilty of contributory negligence, and assessed damages in the sum of $1,100.
From the judgment upon the verdict the defendant appealed, assigning error.
What duty does the law impose upon a motorist driving at night with reference to railroad grade crossings when the vision of the driver is obscured by train, fog or mist, and the pavement is wet and slippery?
In Coleman v. R. R., 153 N.C. p. 322, Brown, J., writes: "A railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the Court."
Again in Holton v. R. R., 188 N.C. p. 277, Hoke, C.J., declares the law thus: "It is the recognized duty of a person on or approaching a railroad crossing to `look and listen in both directions for approaching trains if not prevented from doing so by the fault of the railroad company or other circumstances clearing him from blame,' and where, as to persons other than employees of the company, there has been a breach of this duty clearly concurring as a proximate cause of the injury, recovery therefor is barred."
3 C. S., 2621(b), requires every person operating a motor vehicle, approaching a railroad grade crossing (except as otherwise provided therein), to stop "at a distance not exceeding fifty feet from the nearest rail." However, a failure to stop does not constitute contributory negligence per se, but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff was guilty of contributory negligence.
In the present case the plaintiff testified that he did not see the railroad crossing at all by reason of the location of the track, and particularly by reason of the fact that the rain and mist obscured his vision, *Page 213 
rendering it impossible for him to see the crossing more than thirty-five feet ahead. Hence, in the final analysis, the case presents the question of the duty of an automobile driver, operating his car in the night time, with his vision obscured by rain or other conditions upon the highway.
The identical question has not been determined in this State. In Hughesv. Luther, 189 N.C. 841, this Court declared the law to be that if a motorist in the night time could see a truck parked by the roadside in violation of C. S., 2615, a distance of seventy-five yards, and while operating his car at a speed of 27 or 28 miles an hour, struck the truck, his own negligence was the proximate cause of his injury as a matter of law, and therefore he was not entitled to recover damages from the owner of the truck, even though the truck was parked unlawfully on the highway. In short, the driver could see, but would not slacken his speed or stop or take any precaution for his own safety, but plunged ahead apparently regardless of consequences.
The present case presents to a certain degree an opposite aspect of the law, as the evidence discloses that the plaintiff could not see more than 35 feet because of rain and mist which obscured his vision, and yet he swept on at a speed of 30 or 35 miles an hour.
The general rule under such circumstances is thus stated in Huddy on Automobiles, 7 ed., 1924, sec. 396: "It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of obstructions. . . . If the lights on the automobile would disclose obstructions only ten yards away it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. If the lights on the machine would disclose objects further away than ten yards, and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what could have been seen." The rule thus expressed finds accurate and ample support in the authorities cited. For instance, the Michigan Court in 1922, in Spencer v. Taylor, 188 N.W. 461, said: "We think the court was right in holding plaintiff guilty of contributory negligence as a matter of law. It is well settled that it is negligence as a matter of law to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the distance that objects can be seen ahead of it."
The Ohio Court in 1926, in case of Toledo Terminal R. R. Co. v. Hughes,154 N.E. 916, said: "While it is true that ordinarily the *Page 214 
degree of care an ordinarily prudent man would use under the circumstances disclosed, is a question for a jury, however, we think the conceded facts — the lights that did not penetrate the fog, the traveling at a rate of speed such that when he discovered the train upon the track, the swinging of his wheels to the left caused the rear end of his car to swing around and catch between two freight cars, so when the train started it dragged him off the road into the ditch — all show that the plaintiff below was chargeable with contributory negligence, that he did not exercise that degree of care which one of ordinary prudence should have used, and therefore the trial court was right in directing a verdict."
The Wisconsin Court in Lauson v. Fon Du Lac, 123 N.W. 629, 25 L.R.A. (N.S.), 40, held: "It seems to us, and we decide, that the driver of an automobile, circumstanced as was the driver of the car in which the plaintiff was riding, and operating it under such conditions as he operated his machine on the night of the accident, is not exercising ordinary care if he is driving the car at such rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his lights be such that he can see objects for only a distance of ten feet, then he should so regulate his speed as to be able to stop his machine within that distance."
The Supreme Court of Utah in the case of Nikoleropoulos v. Ramsey, 
214 P. 304, considered this question in a decision rendered March, 1923. The defendant was operating his automobile on a public highway. "The night was stormy, with some rain, which tended to obscure his vision. The plaintiff was walking in the highway. The defendant testified: `I hit him because I didn't see him in time to stop. In other words, I could not stop within that distance.' He further testified that at the time he could not see objects further ahead than six feet and did not see the plaintiff until within six feet of him. The defendant was traveling about twelve miles an hour. At the conclusion of the evidence the plaintiff's attorney requested the following instruction to the jury: `You are instructed that it is negligence as a matter of law for a person to drive an automobile upon a traveled public highway used by vehicles and pedestrians, at such a rate of speed that said automobile cannot be stopped within the distance which the operator of said car is able to see objects upon the highway in front of him.' The trial court refused the request and instructed the jury as follows: `A driver of an automobile at night is required to use such reasonable and ordinary care to have his machine under such control as to not overtake and run down people within the range of his lights, as would be used by a man of average and reasonable care and prudence in his situation.' The opinion in the case declares: `The request of plaintiff was not only a correct statement *Page 215 
of law, but under the authorities cited, it furnished a standard of reasonable and ordinary care without the qualifying phrases injected by the trial court.'"
The principle has been recognized and applied in the states of Kansas, Tennessee, Michigan, Minnesota, Delaware, West Virginia, New Jersey, Pennsylvania and Vermont. Fisher v. O'Brien, 99 Kan. 621, L.R.A. (1917 F), 610; West Cons. Co. v. White (Tenn.), 172 S.W. 301; Heiden v.Minneapolis Street Railway Co., 191 N.W. 254; Philadelphia Reading R.R. Co. v. Dillon, 114 At., 62; Ewing v. Chapman (W.Va.), 114 S.E. 158;Savage v. Pub. Ser. R. R. Co. (N. J.), 99 At., 383; Serfas v. Lehigh N.E. R. Co., 113 At., 370; Gallagher v. Montpelier Wells River R. R., 137 At., 207; Fannin v. R. R., 200 N.W. 651.
The standard of duty announced and applied in the foregoing authorities is broad, severe and unbending, but it appears to be a just rule, particularly in view of the fact of the appalling destruction of life and limb by motor driven vehicles upon the highways of the State.
However, it is not necessary to apply the rule strictly in order to defeat recovery in the present case. Plaintiff, narrating the occurrence, testified as follows: "I was not familiar with the road at all. The road approaching the railroad was not straight. I would say I was 35 feet from the train when I discovered it. . . . It was misting rain, the pavement was wet. . . . I got within 35 feet of the railroad when I discovered an object in front of me. When I first saw it I could not tell what the object was. In the instant I could realize what it was I put on my brakes first. When after putting on my brakes I realized on account of the pavement the brakes would not take; the road was slippery; ordinarily the car would be decreasing by the time, but instead of slowing it got faster as it skidded. I did what I thought was the best thing a reasonable man could do, and I turned my car off the highway to prevent running into the object in front, and I ran off the embankment 25 feet from the track. . . . The train was standing, completely blocking the public road. . . . I did not at that time see an N.C. stop sign. I saw it afterwards in the day time. In coming around the bend, my lights reflected on the left side of the road and the sign was on the right side. I could not see it. . . . Had good lights on the car. Dodge lights are good lights. They will throw the light ahead half of a city block, but they will not show half a block on wet asphalt pavement. . . . My excuse for running my car over the culvert was because Icould not see the train until within 35 feet of it. I was within 35 feet ofit — that was the best I could see at the time. It was not possibleat that distance for me to have stopped right at the *Page 216 train. . . . I was not traveling faster than 35 miles. I said I was going 30 or 35 miles an hour. I think I was going 30 miles. . . . I would say now I was going 30 or 35 miles, possibly 30."
There was testimony that the train had stopped at the crossing in order to get permission from the dispatcher to cross the main line. There was further evidence tending to show that the box cars, blocking the crossing, were 12 to 15 feet high. Capers Young, who was in the car with the plaintiff at the time of the accident, testified that the night was damp, foggy and misty, and further stated: "I did not see anything until I got within 35 feet of the box car. If it had been a mountain, I wouldn't have seen it. You couldn't see 35 feet ahead."
An analysis of plaintiff's testimony points unerringly to the conclusion that the proximate cause of plaintiff's injury was his inability to see more than 35 feet ahead and his inability to stop his car within the distance of his vision by reason of the rapid speed of the automobile. As the motorists say, "He was out-running his headlights" upon strange road upon which there was no traffic or glaring lights, and disregard of the duty imposed upon him to look and listen or to observe the "N.C. stop sign," which stood upon the side of the road, silent admonishing him of possible danger or death. He saw an object front. He says: "When I first saw it I could not tell what the object was." He made no effort to reduce his speed until it was too late. I took a chance and lost.
So far as we can discover, there is no evidence that the plaintiff to any precaution whatever for his own safety, and we therefore he that the motion for nonsuit should have been sustained, and it is ordered.
Reversed.