CLARKSON, J., dissenting.
DEVIN and SEAWELL., JJ., concur in dissent.
Civil action to recover damages for personal injury resulting from alleged actionable negligence. Defendants denied allegation of negligence, and pleaded contributory negligence.
On the night of 6 November, 1938, plaintiff's automobile, driven by his nephew, Alvis Beck, at his request and under his direction, and in which he was riding, traveling north on U.S. Highway No. 15, from Durham toward Oxford, ran into and collided with the rear end of a trailer truck of defendants, loaded with furniture, and likewise headed north, standing partly on and partly off the paved portion of the highway on the east or right side thereof, at a point in Granville County, North Carolina, about one mile north of Harris' filling station and three miles south of the town of Creedmoor and near the foot of a slight down grade, resulting in serious personal injury to plaintiff. At the point of collision the paved portion of the highway was eighteen feet wide. The shoulder on the right side there was four or five feet wide. Southward, the highway was slightly upgrade and straight, or practically straight, for two hundred yards to one thousand feet, and northward it curved slightly to the left.
Plaintiff's evidence tended to show these facts: When the plaintiff's automobile and defendants' truck came to rest after the collision they were both partly on and partly off the paved portion of the highway, and on the east or right side standing twenty to thirty feet apart. One tail light, a dim light, was burning. Lights on one side, the clearance lights, were burning. The dim tail light was on the body of the truck, and "two or three were mashed up over there where it was torn up." There was clearance of ten or twelve feet to the left of the truck according to the testimony of the chief of police when he arrived about thirty minutes after the wreck occurred.
Plaintiff and Alvis Beck were the only witnesses for plaintiff with respect to the operation of plaintiff's automobile immediately preceding the collision. *Page 108 
Narratively stated, plaintiff testified: "We were coming down the right . . . just over the crest of a hill and was meeting an automobile and when the automobile passed our light flashed on the truck, or I guess it was a truck — it was a bulky something in the road. That is the last thing I remember. . . . At the time I first observed the object . . . there was one light visible on the right side, a little bitty dim red light. . . . I detected the light pretty much as soon as I saw the object in the road. I was keeping a lookout along the road in front of me . . . " Then on cross-examination he testified: ". . . I should judge that from where I come over the crest of the hill . . . to where I struck this truck is somewhere around 150 yards. When I come over the crest of the hill and traveling at the rate of forty miles an hour there was nothing in between me and what was there . . . my lights . . . showed as far as from the witness chair to the back end of the courthouse. (Admitted to be 67 feet.) I don't know how far my lights were showing that night at the rate of forty miles an hour. I imagine it was around fifty feet . . . approximately fifty feet. . . . The brakes were in perfect condition. . . . going forty miles an hour . . . according to my testimony it would take me the full distance of my light beam to come to a stop. At the time I come over the crest of this hill and started down there was an unobstructed view of 150 yards. I looked down the road. I didn't see anything. I imagine you could see down to the foot of the hill. When I came to the crest I looked as far down as I could see. I continued to look all the way down. . . . The lights of that automobile that I was meeting looked to be reasonably bright. . . . What kept me or the driver from seeing that parked object in the highway was that you can't see as far down the highway when you are meeting an automobile. The curve beyond where the truck was parked was just a little bit of curve, not very much, bearing a little bit to the left. I know the lights were bright, and I saw the automobile before I hit the truck. . . . I do know that I was looking straight ahead to see if anything was in the road. I always do. Alvis seemed to be looking straight ahead. . . . When I finally met this automobile, or passed it, it might have been 14 feet from the truck . . . somewhere around that. I saw one light on the truck, a red light. When I saw that light I said or did nothing. . . . I felt him put on brakes. There was nothing else I could do. . . . When I first saw the truck I would say I was as much as 12 or 14 feet from the truck. Another automobile was coming that kept us from cutting between that 14-foot gap and missing that truck. . . . I admit it took me and my agent somewhere around 50 feet to stop. . . . There was an automobile meeting us and it passed us beyond the truck, and when that passed, another light flashed up and that is the *Page 109 
last thing I remember. I didn't see any 14-foot gap. I don't know what kept us from going around it."
Alvis Beck, testifying for plaintiff, said: "After we left Harris' filling station, we hit a truck. They said it was a truck. I couldn't tell what it was that night. . . . I drove just ordinary speed, I reckon around 40 miles an hour. . . . I was keeping a lookout along the highway in front of me. . . . After I passed the automobile I saw the object in front of me, whatever it was, a great big something in the road. . . . I was something like as far as from the witness chair to the back side of the building when I first discerned it. After seeing the truck I tried to stop. I knocked it out of gear, and put on brakes, pushed in the clutch. I was not able to stop it. I didn't see any light or lights on the object which I saw in front of me there on the highway. I was looking along the highway in front of me. The front end of the car I was in struck the object which was in the road. . . ." Then on cross-examination the witness testified: "I had driven this car before, several times. I am familiar with the speed. . . . I knew approximately how long it would take to stop a car with the brakes I had. . . . I have driven over that road many times. . . . When you come to the top of the hill you can see down there if there is no car coming to blind you, if there was nothing between you, you could see that far. I don't know how fast I was going when I ran into the truck, I reckon about 15 or 20 miles an hour. . . . An automobile passed us. When I was coming over the grade, the car was coming to meet me. I don't know how far away I was from the automobile that I said blinded me when I saw it. As far as from here across the street maybe. Those lights blinded me. I took my foot off the gas then. I started slowing down because the oncoming lights blinded me. The lights were blinding me, keeping me from seeing the truck in front of my lights. I couldn't look down the road. I did not drive blinded at 40 miles an hour when I couldn't even see. I could see some. They blinded me, but I seen the truck before I hit it. I drove according to my testimony, as far as from here across the street, with the lights blinding me. I slackened up then. . . . I don't know whether I was as far as from the witness chair to the back end of the courthouse before I saw it or not. I said it was something like that. I don't know why I didn't stop when I saw it, it excited me or something. . . . I just couldn't stop when I saw it. I reckon the reason I didn't I was so close to it. . . . When I saw the truck I did not see any lights on the truck. I did not see a red light. If the truck had any lights on it I did not see it. Just as I passed the automobile, whose lights I testified blinded me, after I got past it, I seen the truck. Some more lights were coming that kept me from going through the gap and going around the truck. . . . I *Page 110 
didn't see a wrecked automobile to the left. I didn't see the man there. I don't remember seeing any of these five people there that night."
On the other hand, evidence of defendants tends to show these facts: The truck was properly equipped with lights, both in front and on the rear, six lights on the back of the truck, including clearance lights and arrow signal light containing tail light. The lights were inspected in Durham, and as the truck was driven by James Mellis, from Durham toward Oxford, a Plymouth automobile in which two men, two women and a baby were riding, passed the truck at a point about a half-mile south of the point of the collision between plaintiff's automobile and the truck, at which time the lights on the truck were burning. The Plymouth continued to travel about seventy-five feet in front of the defendants' truck over the crest of the hill and down the grade for approximately 150 yards or more, when its left rear wheel came off causing it to wreck and overturn, upside down, diagonally across the highway, so that the truck could not pass on either side. The truck driver pulled the truck to the right, partly off the pavement, and stopped there within 18 inches or two feet of the rear bumper of the upturned car, when he heard the cries of a woman and a baby. Whereupon, he aroused L. W. Seward, who was sleeping in the truck, and they both, Seward in his bare feet, went to the overturned car to assist the passengers in getting out. Then James Mellis, with the two men who were in the Plymouth, turned it upright and practically off the left side of the highway. A truck traveling north then came along and passed through between defendants' truck and the Plymouth. Then the sound of the plaintiff's automobile was heard coming at a terrific rate of speed at the top of the hill and it came into sight at least 200 yards away, running at an estimated speed of 60 miles an hour, until it collided with the truck. In the meantime, after helping passengers get out of the Plymouth, Seward went back to the cab of the truck and got flares and started to the rear of it to place them upon the highway, but before he could get them lighted and placed the plaintiff's automobile came into collision with the truck. Seward undertook to flag plaintiff by waving his arms. From two to five minutes elapsed between the time the truck stopped on the right side of the road when the Plymouth overturned, and the time of said collision. During that interval no motor vehicle of any kind, traveling south, passed the point of collision and none was passing at the time of the collision.
The case was submitted to the jury upon issues of negligence, contributory negligence and damage. From judgment on adverse verdict, defendants appeal to Supreme Court, and assign error.
Appellants stress for error the refusal of the court below to grant their motion for judgment as of nonsuit at the close of all the evidence — they having reserved exception to refusal to allow such motion at close of plaintiff's evidence — upon two grounds: (1) Lack of sufficient evidence to take the case to the jury on the issue of negligence, in support of which they rely upon Hughes v. Luther, 189 N.C. 841,128 S.E. 145; Stallings v. Transport Co., 210 N.C. 201,185 S.E. 643. (2) Contributory negligence of plaintiff — in support of which they invoke the principles enunciated in the main in Weston v. R. R.,194 N.C. 210, 139 S.E. 237; Lee v. R. R., 212 N.C. 340, 193 S.E. 395. See, also, Elder v. R. R., 194 N.C. 617, 140 S.E. 298, and Eller v. R.R., 200 N.C. 527, 157 S.E. 800.
(1) The principal charge of negligence made against the defendants is parking the truck upon the highway in violation of the provisions of section 24 of chapter 148 of Public Laws 1927, Michie's Code of 1935, section 2621, subsection 66. In this connection one who is required to act in the face of an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made. Ingle v. Cassady, 208 N.C. 497,181 S.E. 562; Poplin v. Adickes, 203 N.C. 726, 166 S.E. 908.
Plaintiff's witness, the chief of police, expressed doubt whether there was room on the dirt shoulder on the right side for the truck to have pulled entirely off the paved surface, loaded as it was. He said: "A man could get off if he had plenty of time. He would not, if he didn't. At that time the condition of the shoulders was soft." Furthermore, the Plymouth car of a third party wrecked when seventy-five feet ahead of the truck and blocked the highway. But defendant's driver, by good fortune, was able to pull the truck partly off the paved surface and to bring it to a stop before striking the disabled car in the road — stopping in eighteen inches or two feet of it. His first act then was to answer the cry of those in distress. His fellow operator, aroused from his sleep, did likewise. Then the driver set about to help remove the disabled car from the road, while his fellow worker returned to the truck to get flares to be placed on the highway. Before this could be done the collision occurred. All this happened in the short space of from two to five minutes, according to uncontradicted estimates of several witnesses. Will the law impute such conduct for negligence? Whether the stopping of the truck partly on the highway under the circumstances and for the length of time shown by the uncontradicted evidence of the defendants constitutes parking on the highway within the meaning and is violative of provisions of section 24 of chapter 148, Public Laws 1927, Michie's Code, 1935, sec. 2621, subsection 66, or whether there is sufficient *Page 112 
evidence of negligence in any other respect alleged, to take the case to the jury, it is, in the view we take of the case, unnecessary to decide. (2) But if it be conceded that defendants were negligent in the respects alleged, we are of opinion and hold that upon plaintiff's evidence the driver of plaintiff's automobile was guilty of contributory negligence as a matter of law, and that this negligence was the proximate cause, or one of the proximate causes, of the injury to plaintiff.
In Weston v. R. R., supra, speaking to a factual situation somewhat similar to that here, this Court said: "The general rule under such circumstances is thus stated in Huddy on Automobiles, 7 Ed., 1924, sec. 296. `It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of obstructions. . . . If the lights on the automobile would disclose obstructions only ten yards away it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. If the lights on the machine would disclose objects further away than ten yards, and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what could have been seen.'" This principle has been brought forward and applied in Lee v. R. R., supra, and held applicable to factual situation in Clarke v. Martin, 217 N.C. 440,8 S.E.2d 230.
It is sufficient to defeat recovery if plaintiff's negligence is one of the proximate causes of the injury, it need not be the sole proximate cause. Construction Co. v. R. R., 184 N.C. 179, 113 S.E. 672; Lunsfordv. Mfg. Co., 196 N.C. 510, 146 S.E. 129; Davis v. Jeffreys, 197 N.C. 712,150 S.E. 488; Lee v. R. R., supra.
When contributory negligence appears from the plaintiff's evidence, a nonsuit is properly granted, but not when such evidence is from the defendant. Battle v. Cleave, 179 N.C. 112, 101 S.E. 555; Nowell v.Basnight, 185 N.C. 142, 116 S.E. 87; Lunsford v. Mfg. Co., supra.
Applying these principles to the evidence for plaintiff, it affirmatively appears: From the crest of the hill northward to the point of collision the highway is straight, or practically straight, for at least two hundred yards or six hundred feet. From the top of the hill "You can see down there if there is no car coming to blind you." When plaintiff's automobile was coming over the grade, a car was coming. Plaintiff's automobile met and passed that car: (1) According to plaintiff's testimony, fourteen feet from the truck — for he said he saw the truck as soon as the car passed, and when he "first saw the truck" he was as much as twelve or fourteen feet from it; and (2) According to testimony of Alvis Beck, *Page 113 
he saw the truck before he hit it, something like as far as from the witness chair to the back end of the courtroom — that is, he was something like 67 feet from it. Plaintiff's automobile was traveling at rate of forty miles per hour when it came over the hill, and when it hit the truck it was going at the rate of fifteen or twenty miles per hour. The driver was blinded by the lights of oncoming car. He testified, "The lights were blinding me, keeping me from seeing the truck in front of my lights. . . . I drove, according to my testimony, as far as from here across the street with the lights blinding me. I slackened then. . . . I don't know why I didn't stop when I saw it, it excited me or something. I just couldn't stop when I saw it. I reckon the reason I didn't I was so close to it." Plaintiff stated that when he first saw the light on the truck, "I felt him (the driver) put on the brakes." Plaintiff also makes this significant statement, "What kept me or the driver from seeing that parked object in the highway was that you can't see as far down the highway when you are meeting an automobile."
It is not enough that the driver of plaintiff's automobile be able to begin to stop within the range of his lights, or that he exercise due diligence after seeing defendants' truck on the highway. He should have so driven that he could and would discover it, perform the manual acts necessary to stop, and bring the automobile to a complete stop within the range of his lights. When blinded by the lights of the oncoming car so that he could not see the required distance ahead, it was the duty of the driver within such distance from the point of blinding to bring his automobile to such control that he could stop immediately, and if he could not then see, he should have stopped. In failing to so drive he was guilty of negligence which patently caused or contributed to the collision with defendant's truck, resulting in injury to plaintiff. And the negligence of the driver, under the relationship here disclosed, is imputable to the plaintiff.
This case is distinguishable from these cases relied upon by plaintiff:Williams v. Express Lines, 198 N.C. 193, 151 S.E. 197; Smithwick v.Pine Co., 200 N.C. 519, 157 S.E. 612; Pender v. Trucking Co., 206 N.C. 266,173 S.E. 336; Cole v. Koonce, 214 N.C. 188, 198 S.E. 637;Clarke v. Martin, supra; Page v. McLamb, 215 N.C. 789, 3 S.E.2d 275.
The judgment below is
Reversed.