H. G. WILSON v. CENTRAL MOTOR LINES, INC., AND E. E. POOLE,
and
SUSAN ANN WILSON v. CENTRAL MOTOR LINES, INC., AND E. E. POOLE,
and
GLENN A. WILSON v. CENTRAL MOTOR LINES, INC., AND E. E. POOLE.

(Filed 16 June, 1949.)

**1. Negligence § 1—**

Actionable negligence is the failure to exercise proper care in the performance of some legal duty which defendant owes plaintiff under the circumstances in which they are placed, which is the proximate cause or one of the proximate causes of injury.

**2. Negligence § 5—**

Proximate cause is that cause which produces the injury in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed.

**3. Automobiles §§ 8d, 18h (2)—**

Evidence that a disabled truck was left standing on the hard-surface of a highway at night without warning flares or lanterns as required by statute, G.S. 20-161 (a), and that a car, approaching from the rear, collided with the back of the truck, resulting in injuries to the driver and passengers in the car, *is held* sufficient to be submitted to the jury on the issue of negligence in each of the actions instituted by the driver and occupants of the car against the driver and owner of the truck.

**4. Automobiles § 8d—**

The driver of a car is not required to anticipate that vehicles will be parked on the highway at night without the warning signals required by statute, but this does not relieve him of the duty to keep a proper lookout and not to exceed a speed at which he can stop within the radius of his lights, taking into consideration the darkness and atmospheric conditions.

**5. Same, Automobiles § 18h (3)—**

Where plaintiff's own evidence discloses that his lights and brakes were in good condition, that he was driving with his lights full on at thirty-five miles per hour, that he could see 150 feet ahead despite the darkness and heavy fog, and that he failed to see any obstruction, and hit the rear of a truck parked on the highway in his lane of traffic without lights or warning flares, *is held* to disclose contributory negligence on his part as a matter of law.

**6. Negligence § 11—**

It is not required that plaintiff's negligence be the sole proximate cause of his injury in order to bar his recovery, but it is sufficient to bar recovery if it be one of the proximate causes of the injury.

**7. Automobiles § 21—**

In this action by passengers in an automobile against the driver and owner of a truck to recover for injuries sustained when the car collided with the truck parked on the highway at night without the statutory warning signals, an instruction that plaintiffs would not be entitled to recover if the negligence of the driver of the car was the sole proximate cause of the accident, *is held* sufficient on the question of insulated negligence.

ERVIN, J., dissenting in part.

SEAWELL, J., concurs in dissent.

APPEAL by defendants from *Carr, J.,* at August Civil Term, 1948, of ORANGE.

Three civil actions to recover for personal injuries sustained in motor vehicle collision allegedly caused by actionable negligence of defendants.

The several plaintiffs allege in their respective complaints as acts of negligence proximately causing the collision between the automobile in which they were riding and the said tractor and trailer, that defendants (1) "left said truck and trailer standing upon the paved portion of the highway when it was practical to park or leave said truck or trailer off the main traveled portion of the highway, while unattended and when there was not a clear and unobstructed width of 15 feet upon said highway opposite said truck for the free passage of the other vehicles thereon and when a clear view of said truck and trailer could have been had from a distance of 200 feet in both directions," and (2) failed "to display a lantern or flares at 200 feet in the front and rear of said truck and trailer" in violation of the duty which they owed to the public generally and plaintiffs in particular, and of the laws of the State of North Carolina governing the operation of said vehicles.

On the other hand, the defendants, answering, deny the allegations of negligence set out in the several complaints, and, for further defense, aver, in substance, that the tractor-trailer became disabled, through no fault of theirs, and could not be rolled off the pavement, and that defendant Poole took precautionary measure to safeguard the public in manner set out.

And, also for further defense, defendants aver that Glenn A. Wilson was contributorily negligent in manner set forth, and as against him plead same in bar of his right to recover in his action, and as against plaintiffs H. G. Wilson and Susan Ann Wilson, passengers in Glenn A. Wilson's automobile, they aver that the conduct of the driver, Glenn A. Wilson, as alleged, contributed to and was a proximate cause of the injuries complained of by the plaintiff, and that such negligence on the part of the driver insulated the negligence of defendants, if there were any, and same is pleaded in bar of any recovery by either H. G. Wilson or Susan Ann Wilson.

Upon the trial in Superior Court each of the plaintiffs testified as witnesses for all plaintiffs. Their testimony tends to be in agreement in these matters: That on the date of the collision in question, H. G. Wilson, plaintiff, was living in Efland, North Carolina, and his son, Glenn A. Wilson, and his daughter, Susan Ann Wilson, also plaintiffs, lived with him, and they all worked in Burlington,—he and his son at Fairchild plant, and his daughter at Graber Silk Mill; that on the morning of 15 February, 1946, they left their home for work at ten minutes past six o'clock in Glenn's automobile,—he driving, and Susan Ann, his sister, on the front seat beside him, and H. G., his father, in the back seat; that it was dark when they left home, and the lights of the automobile were turned on; and that as they were proceeding west on Highway No. 70 the automobile ran into a parked truck, also headed west, on the highway

at a point about two miles from their home, where the highway was straight for a quarter of a mile.

The plaintiff H. G. Wilson also testified in pertinent part: That they had traveled between their home and the point of collision at the rate of speed between 35 and 40 miles per hour; that he was looking straight up the road; that he did not see the truck, nor did he see any flares along the road on or near it,—no lanterns or pots burning, and there were no lights on the truck; that the only lights he saw in front of the car in which he was riding were the lights of a car meeting them; that just about the time the car in which he was riding was about to pass the oncoming car, the collision happened, "and I went out"; that he did not know what took place about the time he was meeting the oncoming car; and that he lost consciousness just as they were in the act of passing.

And, on cross-examination, the witness continued: That he had been working at Fairchild something like a month or two before the collision and had gone up and down the road every day except Saturday and Sunday, and was thoroughly familiar with the road; that the road was paved; that it had rained through the night; that the brakes were all right on his son's car and if he had applied them he could have stopped the car; that the lights were good and bright; that you could see down the road a long way; that he would say you could see 100 feet; that his son had his car under control and had his full headlights on; that he could not say whether his son dimmed when the other car approached, but that the other car did not dim; that his son did not apply his brakes but just kept on driving.

The plaintiff Susan Ann Wilson further testified in pertinent part: That they were traveling in the direction of Burlington at a speed of 35 or 40 miles an hour when they were involved in the collision with the truck; that she did not see the truck prior to the collision although she was looking straight ahead; that she did not see any lights on the truck nor any flares or lanterns or smudge pots on the highway; that she was knocked unconscious at the time of the collision and regained consciousness at the hospital; that at the time of the collision the car in which she was riding was meeting another car coming east; that when the collision took place they were meeting an approaching car which had not passed them; and that she does not know how far apart they were. And in response to question, "Were they close together?", this witness replied, "No." In response to a question from the court, she said the lights were burning on the car that was meeting them. Then, on cross-examination, the witness testified that at the place of the accident the road was level and straight for a quarter of a mile.

The plaintiff, Glenn A. Wilson, further testified in pertinent part: That at time he left home it was very dark and foggy; that the lights

were burning on his automobile and he was driving around 35 miles an hour and proceeding directly from his home to point of collision; that he, prior to the time of the collision, had not seen any obstruction on the highway, nor did he see any lights or flares or smudge pots; that the car he was driving ran into a truck which was standing still on the highway; that he was knocked unconscious but regained consciousness for a short time at the scene of the accident; that he had been driving an automobile for about 18 years. Then, on cross-examination, the witness continued: That he had been driving along the section of the road where the wreck occurred and was familiar with the place; that he had good lights on his car and they shone ahead about 150 feet. And, on being asked by the court, "You mean shone well enough for you to see an object ahead of you?", he answered "Yes." That the lights were on full; that his brakes were very good; that he was keeping a lookout and was going about 35 miles an hour; and that there was a heavy fog but he could see 150 feet ahead.

And, being recalled, plaintiff Glenn A. Wilson, under examination by the court, was asked these questions, and gave the answers indicated as follows:

Q. "Do you remember whether the man meeting you just about the time this wreck occurred dimmed his lights?"

A. "No, I don't know whether he did or not."

Q. "Do you recall whether or not you dimmed yours?"

A. "No, I don't know."

Q. "You would not say you did and you would not say you didn't?"

A. "No."

Q. "And you would not say he did and you would not say he didn't?"

A. "No, I would not."

Q. "Do you have any recollection or any way of knowing how close that car was to you when you were rendered unconscious?"

A. "No, I don't."

Q. "Do you recall that you were meeting a car?"

A. "Yes, I do. His lights were very bright and I don't think I dimmed mine, but looking more or less straight at the lights he looked like he was hogging the road like some trucks do. I don't remember when I hit the truck whether he had passed me or whether he was just getting by me. I don't remember the lick but I do remember leaning over from the lights, pulling to the right side of the road to make sure I would get by him."

Q. "You say you can't now recall whether he had passed you or whether he had got to you?"

A. "It was close to the center at the time I went out. You could see the car coming down meeting me."

Q. "Do you recall whether you made any effort to slacken your speed before you were rendered unconscious?"

A. "I don't think I did, sir."

Plaintiff offered testimony, of others, who came to the scene after the accident, tending to show: That the road was straight for about 800 feet; that the shoulder of the road to the right of the truck was approximately 6 or 7 feet; that the truck was on the pavement at the bottom of a small dip, and on the right-hand side going west; that the chassis of the truck was approximately 4½ to 5 feet above the highway, and the left front of the automobile had run under the right rear corner of the trailer to the point where the windshield goes into the top,—part of the top being mashed down, the left door crushed and the windshield broken out; that there were no flares, smudge pots, or lights of any kind; but there were red glass reflectors,—three of them, placed about the truck, one in front, one on the side and one at the rear; that these reflectors were four inches in diameter and six inches high, according to one witness, and about twelve inches high in the estimate of another, and reflected lights of approaching cars; and that defendant Poole, who was present, stated that his lights were not on, and that the truck had broken down and he was unable to move it.

The defendant Poole, as witness for defendant, testified that the truck stopped about 9 o'clock on the night of 14 February, 1946; that he was unable to get it any further, or off the pavement; that he undertook to obtain assistance to move it; that failing to get assistance he took measures, described by him, to warn of the presence of the truck upon the highway; that all his lights were burning; that he stayed with the truck the remainder of the night; that he would get out and run around and try to keep warm from time to time, and checked his lights each time and found them to be on and burning; that the last time it was 6:30; that he got back in his cab at 6:30 and had gotten settled in the seat when a market truck came along the highway traveling west to east, the opposite direction from that in which the truck was headed; that just as this market truck was even with his tractor and trailer he heard some tires skid in the back of his trailer and looked in his rear view mirror to see what was taking place; that just as he looked in the mirror his truck jarred and he looked in the rear view mirror and saw an automobile up under the extreme right corner of the trailer; that after he saw what had happened he ran back to the automobile; that the truck which had been passing him was over on the right-hand side of the road headed east; that there were three people in the automobile, the plaintiffs in these actions, and that he talked to the driver of the car and said: "Fellow, can't you see a thing as big as a trailer," and the driver said, "I could not

stop." And defendants offered other evidence not necessary to be set forth.

The cases of H. G. Wilson and Susan Ann Wilson were submitted to the jury on three issues,—separate issues of negligence as to each defendant, and the third as to damages,—all of which were answered by the jury in favor of the said plaintiffs respectively.

The case of Glenn A. Wilson was submitted to the jury on like issues to those in the other two cases, with a fourth issue as to his contributory negligence. The jury answered all these issues in favor of the plaintiff.

From judgments on the several verdicts, defendants appeal to Supreme Court and assign error.

*Bonner D. Sawyer and R. M. Gantt for plaintiffs, appellees.*
*Fuller, Reade, Umstead & Fuller for defendants, appellants.*

WINBORNE, J. The question here is whether the trial court erred in its ruling denying defendants' motions for judgment as in case of nonsuit. Considered in the light most favorable to plaintiffs, the evidence offered on the trial in Superior Court, as shown in the case on appeal, as it relates to the cases of H. G. Wilson and Susan Ann Wilson, passengers in Glenn A. Wilson's automobile, dictates a negative answer, but as it relates to the case of Glenn A. Wilson, the driver of his automobile, an affirmative answer.

In order to make out a case of actionable negligence a plaintiff must show that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to plaintiff, under the circumstances in which they were placed; and, that such negligent breach of duty was the proximate cause, or one of the proximate causes of the injury, that is, a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed. *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84.

In this connection, G.S. 20-161 (a), pertaining to the stopping of vehicles upon the highways outside of business and residential districts, provides "that in the event that a truck, trailer or semi-trailer is disabled upon the highway that the driver of such vehicle shall display, not less than two hundred feet in the front or rear of such vehicle, a warning signal; that during the hours from sunup to sundown a red flag shall be displayed, and after sundown red flares or lanterns. These signals shall be displayed as long as such vehicle is disabled upon the highway."

Applying these principles and the provisions of the statute to the case in hand, the evidence is sufficient to take the case to the jury as to failure

of defendants in the performance of the duty required of them under the circumstances of this case, and as to its causal relation to the injuries of which complaint is made. See *Conley v. Pearce-Young-Angel Co.*, 224 N.C. 211, 29 S.E. 2d 740.

But the plaintiff Glenn A. Wilson, who was driving his automobile at the time it collided with the disabled truck of defendants, had another hurdle to surmount, and on it he trips and goes down. The evidence of plaintiffs, even this plaintiff's own testimony, clearly and unmistakably shows that he was negligent in "outrunning his lights," or in failing to keep a proper lookout, and that such negligence on his part was a contributing cause of the collision. *Weston v. R. R.*, 194 N.C. 210, 139 S.E. 237; *Beck v. Hooks*, 218 N.C. 105, 10 S.E. 2d 608; *Allen v. Bottling Co.*, 223 N.C. 118, 25 S.E. 2d 388; *Caulder v. Gresham*, 224 N.C. 402, 30 S.E. 2d 312; *Tyson v. Ford*, 228 N.C. 778, 47 S.E. 2d 251; *Bus Co. v. Products Co.*, 229 N.C. 352, 49 S.E. 2d 623; *Cox v. Lee, ante,* 155, 52 S.E. 2d 355; *Brown v. Bus Lines, ante,* 493.

In *Allen v. Bottling Co., supra,* this Court cites the darkness of night as a condition a motorist is required to take into consideration in regulating his speed "as may be necessary to avoid colliding with any person, vehicle, or other conveyance,"—then Section 103, Chap. 407, P.L. 1937, now G.S. 20-141, and held, as had been done in many previous cases cited, that he, the motorist, "must operate his automobile at night in such manner and at such speed as will enable him to stop within the radius of his lights." To the same effect are the holdings in *Tyson v. Ford, supra; Cox v. Lee, supra;* and *Brown v. Bus Lines, supra.*

Moreover, in *Tyson v. Ford, supra,* a case similar in factual situation to the one in hand, Stacy, C. J., writing for the Court, had this to say: "It is true that the driver of the Tyson car was not bound to foresee or to anticipate that an unlighted truck would be left standing on the traveled portion of the highway ahead of him without flares or other signs of danger, but this did not relieve him of the necessity of keeping a proper lookout and proceeding as a reasonably prudent person under the circumstances. 'While the plaintiff had the right to assume that other motorists would not obstruct the highway unlawfully, and would show the statutory lights if they stopped, he could not for that reason omit any of the care that the law demanded of him.' *Steele v. Fuller*, 104 Vt. 303, 158 Atl. 666."

To like effect are these cases: *Bus Co. v. Products Co., supra; Cox v. Lee, supra;* and *Brown v. Bus Lines, supra.*

Pertinent to these principles the testimony of this plaintiff shows that he had good lights on his car; that they were on full; that they shone ahead about 150 feet,—well enough to see an object ahead; that there was a heavy fog, but that he could see 150 feet ahead; that though he says he

was keeping a lookout, he had not seen any obstruction on the highway prior to the collision; that he was driving 35 miles per hour; and that he does not think he made any effort to slacken his speed. Moreover, he does not say that the lights of the approaching automobile blinded him.

This evidence brings this plaintiff's case within the line of decisions listed by *Stacy, C. J.,* in *Tyson v. Ford, supra,* in which contributory negligence has been held as a matter of law to bar recovery. We incorporate these cases here by reference. To like effect are these later cases: *Bus Co. v. Products Co., supra; Cox v. Lee, supra;* and *Brown v. Bus Lines, supra.*

It is sufficient to defeat recovery if plaintiff's negligence is one of the proximate causes of the injury. It need not be the sole proximate cause. *Beck v. Hooks, supra; Tarrant v. Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565; *Austin v. Overton,* 222 N.C. 89, 21 S.E. 2d 887; *Tyson v. Ford, supra*

Defendants also assign as error the failure of the court to charge the jury on insulated negligence. In view of the pleadings, it may be fairly doubted that insulated negligence was before the court. But if it were, the charge as given would seem to be sufficient as to whether the negligence of Glenn A. Wilson was the sole proximate cause of the injuries of which the plaintiffs H. G. Wilson and Susan Ann Wilson complain. Moreover, the portion of the charge assailed for lack of clarity, is sufficient to withstand the attack.

After full consideration of all assignments of error, we find in the judgments in favor of H. G. Wilson and Susan Ann Wilson

No error.

But the judgment in favor of Glenn A. Wilson is

Reversed.

ERVIN, J., dissenting in part: I dissent from the decision of the majority in so far as it reverses the judgment rendered in favor of Glenn A. Wilson. In my opinion, the ruling that this particular plaintiff was contributorily negligent as a matter of law runs counter to a well established principle of the law of negligence that a person is not bound to anticipate negligent acts or omissions on the part of others; but in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him only from the violation of duty or law by such other person. *Gaskins v. Kelly,* 228 N.C. 697, 47 S.E. 2d 34; *Cummins v. Fruit Co.,* 225 N.C. 625, 36 S.E. 2d 11; *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211; *Cab Co. v. Sanders,* 223 N.C. 626, 27 S.E. 2d 631; *Tarrant v. Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565;

*Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Hancock v. Wilson,* 211 N.C. 129, 189 S.E. 631; *Jones v. Bagwell,* 207 N.C. 378, 177 S.E. 170; *Shirley v. Ayers,* 201 N.C. 51, 158 S.E. 840; *Wilkinson v. R. R.,* 174 N.C. 761, 94 S.E. 521; *Wyatt v. R. R.,* 156 N.C. 307, 72 S.E. 383.

The plaintiff undertook to drive his automobile on the public highway during the nighttime. In so doing he had the right to take it for granted in the absence of circumstances indicating the contrary that no other motorist would permit a motor vehicle either to move or to stand on the highway without displaying thereon a lamp projecting a red light visible under normal atmospheric conditions from a distance of five hundred feet to its rear. G.S. 20-129 (d) ; G.S. 20-134. Moreover, he had the further right to presume until given reasonable grounds for thinking otherwise that the driver of any truck becoming disabled on the highway after sundown would display red flares or lanterns at least two hundred feet to the rear of the disabled truck as a warning to approaching motorists of the impending peril. G.S. 20-161.

The answers of the jury to the first issue in each of the cases make it plain that the collision would not have happened if the defendants had obeyed the law and performed their duty. When I interpret the testimony in the light most favorable to the plaintiff, Glenn A. Wilson, I reach the conclusion that it reasonably warrants the inferences that Glenn A. Wilson governed his lookout and speed at the time and place named in the pleadings by the assumption that all precautions required of others for his protection from injury had been taken; that he was justified in so doing because no circumstances indicated anything to the contrary; and that by reason thereof he acted as a reasonably prudent person would have done under the circumstances as they presented themselves to him. In consequence, I think that the trial court did not err in refusing to dismiss his action upon a compulsory nonsuit, and vote to affirm the judgment in his favor. This conclusion finds support in these decisions: *Thomas v. Motor Lines, ante,* 122, 52 S.E. 2d 377; *Cummins v. Fruit Co., supra; Leonard v. Transfer Co.,* 218 N.C. 667, 12 S.E. 2d 729; *Clarke v. Martin,* 215 N.C. 405, 2 S.E. 2d 10; *Cole v. Koonce,* 214 N.C. 188, 198 S.E. 637; *Williams v. Express Lines,* 198 N.C. 193, 151 S.E. 197.

SEAWELL, J., concurs in dissent.